UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
WAYNE A. KRUSE, LISA M. McLEOD,
ROBERT SCHILL, and DAVID and
BARBARA LEGRO, on behalf of
themselves and all others similarly
situated,

                        Plaintiffs,

   -against-                                MEMORANDUM AND ORDER
                                          02-CV-3089 (ILG)

WELLS FARGO HOME MORTGAGE,
INC., WFC HOLDINGS CORPORATION,
WELLS FARGO & COMPANY, and
WELLS FARGO FINANCIAL SERVICES,
INC.,

                        Defendants.
-------------------------------------------------x

GLASSER, United States District Judge:

## INTRODUCTION

This putative class action, filed by plaintiff Wayne A. Kruse, ("Kruse") Lisa M. McLeod, Robert Schill, and David and Barbara Legro (collectively, "original named plaintiffs"), alleges that defendants Wells Fargo Home Mortgage, Inc., WFC Holdings Corp., Wells Fargo & Co., and Wells Fargo Financial Services, Inc. (collectively, "defendants" or "Wells Fargo") charged "overcharges" and "mark ups" for settlement services, in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. Currently before the Court are two motions. The first is defendants' motion for summary judgment against the original named plaintiffs. The second is a

1

motion to intervene--filed in two stages--along with amended complaints pursuant to Fed. R. Civ. P. 24(b).

For the reasons stated herein, the motion for summary judgment against the original named plaintiffs is granted and the plaintiffs' motion to intervene is denied.

## BACKGROUND

The original summons and complaint were filed May 24, 2002. The complaint alleged that certain billing practices of Wells Fargo violated the RESPA, in particular, § 8(b) (codified at 12 U.S.C. § 2607(b)), which provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

In an initial conference before Magistrate Judge Mann on September 12, 2002, fact discovery as to all but the absent class members was ordered to be completed by March, 21 2003.[1] Plaintiffs' Rule 26 expert disclosure in connection with the class certification motion was due on February 28, 2003. However, the class certification process was cut short by the defendants' filing of a motion for judgment on the pleadings in mid-February. Pursuant to an agreement between the parties, this Court entered a Stipulation and Order, dated February 19, 2003, staying discovery until the Court reached a decision on the pending motion. In that Order, Magistrate Mann ordered that discovery recommence if the motion was denied. The motion was fully

---

[1] Defendants filed an answer to the plaintiffs first set of interrogatories on December 12, 2002, where they provided information of the invalidity of the original named plaintiffs' claims. (Defs. 56.1 Stmt., Ex G.).

briefed in April and heard on May 16, 2003. This Court issued its opinion from the bench, dismissing both the "overcharge" and "mark-up" claims under RESPA, relying upon four circuit court opinions on precisely the same issue (see, Haug v. Bank of America, N.A., 317 F.3d 832 (8th Cir. 2003); Krzalic v. Republic Title Co., 314 F.3d 875; Boulware v. Crossland Mortgage Corp., 291 F.3d 261 (4th Cir. 2002); Echevarria v. Chicago Title & Trust Co., 256 F.3d 623 (7th Cir. 2001), and declining supplemental jurisdiction for the remaining state law claims.

From that Order, a timely appeal was taken. See Kruse v. Wells Fargo Home Mortgage, Inc., et al., 383 F.3d 49 (2d Cir. 2004). The Second Circuit decision, docketed November 29, 2004, affirmed in part and reversed in part. The Second Circuit treated the complaint as alleging two basic theories under the statute–an "overcharge"[2] theory and a "mark up"[3] theory. With respect to the overcharge claims, the Second Circuit affirmed, finding no basis in the statute for permitting federal courts to inquire into the "reasonableness" of overcharges, and thus, disclaimed HUD's Policy Statement, 66 Fed.Reg. at 53,059,[4] which urged liability on an overcharge theory under 12 U.S.C. §

---

[2] The "overcharges" were for "services provided by the lender itself but charged to consumers seeking home mortgages for substantially more than the provider's cost." Kruse v. Wells Fargo Home Mortgage, Inc., et al., 383 F.3d 49, 53 (2d Cir. 2004).

[3] The "mark up" theory was that defendants outsourced the task of providing the service to a third-party vendor, and then, "without providing an additional service, charge[d] homeowners seeking mortgages a higher fee for the settlement service than that which the provider paid to the third party vendor." Id.

[4] The HUD Policy Statement read, in relevant part:
It is HUD's position that Section 8(b) proscribes the acceptance of any portion or part of a charge other than for services actually performed...In HUD's view, Section 8(b) forbids the paying or accepting of any portion or percentage of a settlement service–including up to 100%–that is unearned, whether the entire charge is divided or split...or is retained by a single person...A settlement service provider may not levy an additional charge upon a borrower for another ... provider's services without providing additional services....Accordingly, a settlement service provider may not mark-up the cost of another provider's services without providing additional

3

2607 (codified as 24 C.F.R. § 3500.14 et seq.). (Kruse, supra, at 56).

In that opinion, Judge Sack treated the underwriting services as overcharges:

> "Overcharges" arise out of settlement services provided by lender...but charged to consumers...for substantially more....Specifically, the plaintiffs allege that the defendants performed underwriting services–which in this case consist of analyzing a borrower's ability to repay the loan in order to determine whether the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac") will guarantee to purchase the loan on the secondary market, removing most of the lender's risk on the loan–using automated software obtained from Fannie Mae and Freddie Mac at a cost of $20 per loan underwritten. The defendants are said to have charged home mortgage borrowers as much as twenty-five times that amount for the service.

383 F.3d at 53.

The Second Circuit reversed this Court with respect to the "mark up" claims, categorizing the tax services, flood certification, and document preparation fees as mark ups. Guided by the Eleventh Circuit's analysis of the relevant statute in Sosa v. Chase Manhattan Mortgage Corp., 348 F.3d 979 (11th Cir. 2003),[5] the Court found that the statutory language did not unambiguously prohibit the plaintiff's mark-up theory. (Kruse, 383 F.3d, at 58). It also accorded the HUD Policy Statement Chevron deference. (Id., at 55) (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The state law claims for unjust enrichment were also reinstated, since they had been dismissed for lack of supplemental jurisdiction only. (Kruse, 383 F.3d at 62).

The parties immediately returned to the discovery process, although only with respect to the originally named plaintiffs. In a Discovery Scheduling Order dated

---

settlement services..."
Fed.Reg. 53,058-53,059.

[5] This case was decided after the circuit opinions upon which this Court's decision relied.

January 5, 2005, Magistrate Mann directed that discovery should proceed, "limited in scope to the 'mark-up' claims of the five individual plaintiffs and <u>with no class action discovery at this time</u>." (<u>Discovery Scheduling Order</u>, 01-05-2005) (emphasis added). The initial Order gave the defendants until May 25, 2005, to decide whether or not to move for summary judgment with respect to the original named plaintiffs. Magistrate Judge Mann continued to conduct conferences dealing with discovery scheduling as well as settlement, several of which resulted in extensions to the discovery schedule. By June 15, 2005, settlement talks had failed, and Magistrate Judge Mann therefore set out a motion schedule for those motions presently under consideration.[6]

Pursuant to the motion schedule, defendants moved against the named plaintiffs for their only remaining federal claims–the mark up claims. This motion was unopposed by named plaintiffs. (<u>See</u>, <u>Plaintiffs' Amended Memorandum of Law in Support of Their Cross Motion for Intervention</u>, ("Plts. Amend. Cross Mot.") 2, n.1).

Plaintiffs' counsel now submits new plaintiff-intervenors who wish to establish themselves as lead plaintiffs of the still uncertified putative class action. On July 18, 2005, the named plaintiffs' attorneys submitted a Cross Motion to Intervene on behalf of Richard and Rhianna Carrillo and Armando Martinez (collectively, "First Intervenors") along with the "Proposed Amended Complaint" (hereinafter "First Amended Complaint"). These plaintiffs allege overcharges of unearned underwriting fees. Defendants filed opposition papers August 8, 2005. Shortly thereafter on the

---

[6] The schedule was as follows: (1) defendants were to move for summary judgment against the named plaintiffs by June 17, 2005; (2) plaintiffs' response and/ or cross-motion was due by July 18, 2005; (3) defendant's reply as well as opposition were due by August 8, 2005; (4) and plaintiffs' reply on its motion was due by August 22, 2005.

5

same day plaintiffs filed an "Amended Motion to Intervene" accompanied by a "Proposed Amended Class Action Complaint" (hereinafter "Second Amended Complaint"). That complaint sought to add five intervenors: Alinda Martinez (the wife of one of the initial proposed intervenors), David R. Jarvis and Suzanne L. Jarvis, Sharon Petrie and Patricia Coley (collectively, "Second Intervenors"). All of these proposed plaintiffs assert underwriting charges, and David and Suzanne Jarvis assert "appraisal and tax service" fees. Plaintiffs' response papers, addressing the defendants' August 8 opposition papers, were filed August 22, 2005. On that same day, and subsequent to plaintiffs' response, defendants filed their opposition to the "Amended Motion to Intervene."

Defendants make several arguments in opposition to the motion to intervene. First, they contend that the cross-motion for intervention is untimely, because plaintiffs' attorneys had been aware of the need to substitute plaintiffs for years. Second, they assert that venue is improper for all intervenors, since none of them reside in, or have any connection to, the Eastern District of New York. Third, they contend that the dismissal of the named plaintiffs has resulted in the lack of a case or controversy as required by Article III of the U.S. Constitution, since no class has yet been certified. Finally, they argue that even if the intervenors are permitted to pursue their claims, the Court should find that they do not toll the statute of limitations for the purported class.

In addition to extending their original arguments to the "Second Amended Complaint," defendants claim that the submission of that complaint after defendants' opposition was filed is untimely and prejudicial to them. Moreover, they contend that both of the amended complaints express only one claim on underwriting fees charged–a

6

claim that the Second Circuit construed as an overcharge, which could not support a claim under RESPA.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

The original named plaintiffs Wayne A. Kruse, Lisa M. McLeod, Robert Schill, and David and Barbara Legro do not deny that their claims are meritless; they have not been charged mark up fees in connection with settlement services. When there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. See generally, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323-4 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Defendants' motion for summary judgment against the original named plaintiffs, which was not opposed, is therefore granted. Since they lack standing to pursue these claims both individually and on behalf of the putative class, their RESPA claims are dismissed with prejudice, and the Court declines supplemental jurisdiction over their state law claims.

### II. Motion to Intervene

The present case poses the question of whether or not intervention is the proper mechanism by which plaintiffs can resuscitate a suit in which the original named plaintiffs never had standing to sue. Finding this to be a prejudicial use of Rule 24, the Court determines that it is not.

#### A. Permissive Intervention Standard

Plaintiffs move for permissive intervention under Fed. R. Civ. P. Rule 24(b) only. Rule 24(b) provides:

> (b) Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 24(b) gives district courts "broad discretion in determining whether or not permissive intervention should be allowed. United States Postal Service v. Brennan, 579 F.2d 188, 192 (2d Cir. 1978). See also, In re Bank of New York Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003); Farmland Dairies v. Comm'r of N.Y. Dep't of Agric. & Mkts., 847 F.2d 1038, 1044 (2d Cir. 1988) (post-settlement motion to intervene untimely). Among the factors that a district court considers are that the motion must be timely made and must be pleaded to show common questions of law or fact in either the claims or defenses asserted. State of New York v. Reilly, 143 F.R.D. 487, 490 (N.D.N.Y 1992). These connections between common questions of law or fact are to be construed liberally. See, e.g., McNeill v. New York City Hous. Auth., 719 F.Supp. 233, 250 (S.D.N.Y. 1989) (citing Davis v. Smith, 431 F.Supp. 1206, 1209 (S.D.N.Y. 1977) aff'd, 607 F.2d 535 (2d Cir. 1978). Other factors to be considered in this calculation include "how long the applicant had notice of the interest before it made the motion to intervene," and "any unusual circumstances militating for or against a finding of timeliness." In re Bank of New York, 320 F.3d at 300.

As a component of the intervention question, courts must principally consider two factors: (1) Undue delay or prejudice to the rights of the original parties, and (2) whether the applicant will benefit by intervention. Brennan, 579 F.2d at 192 (citing Spangler v. Pasadena City Board of Education, 552 F.2d 1326, 1329 (9th Cir. 1977).

Other factors that may be considered include: the nature and extent of the intervenors' interests; whether their interests are adequately represented by the other parties; and whether intervention will significantly contribute to full development of the underlying factual issues. (Id.).

**B. Application of Rule 24(b)**

In essence, plaintiffs attempt to do by intervention what they could not otherwise do through the filing of individual claims, or the filing of a new class action complaint without the tolling benefit–both of which remain viable options for most of the intervenors. Having conceded that the original named plaintiffs have never had standing to sue, plaintiffs counsel hopes to continue the lawsuit by intervention.

Defendants argue that permitting intervention would be prejudicial because it would "reverse the course" of litigation, where discovery was limited to an inquiry into the claims of the named plaintiffs–an inquiry that was already completed in December of 2002. Plaintiffs propose no limiting principle as to when intervention would, if ever, become an inappropriate means of continuing litigation. Such a legal position was neither contemplated by Rule 24, nor true to its spirit. Plaintiffs position is, in essence, a means of manufacturing jurisdiction to continue the lawsuit. See In re Elscint, Ltd. Securities Litigation, 674 F.Supp. 374, 378 (D.Mass. 1987). As a form of procedural arbitrage, it is prejudicial.

Here, the Court finds the defendants' final argument, nominally addressed to the tolling issues, of particular relevance. Defendants argue that even if intervention is permitted, plaintiffs should not receive the benefit of tolling given to putative class members who file individual claims subsequent to a class certification denial. American

9

Pipe and Construction Co., v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Both parties agree that in the event the case is dismissed, Korwek would bar tolling for any subsequently filed class action. (Korwek v. Hunt, 827 F.2d 874 (2d Cir. 1987)). Defendants contend that this same logic should apply here. Since the tolling question implicates the question of whether or not intervention would constitute prejudice, it is relevant here.

In American Pipe, the Supreme Court held that the commencement of a class suit tolled the statute of limitations for all purported members of the class who make timely motions to intervene after the court has denied class certification. 414 U.S. at 538. In Korwek, the Second Circuit held that individuals who had been excluded from a class certification decision would not receive the benefit of American Pipe's tolling provision in order to initiate a subsequent class action. (Korwek, 827 F.2d at 878). While their individual claims would have been tolled by American Pipe, the Second Circuit held that permitting plaintiffs to receive the benefit of tolling for subsequent class actions would invite abuse, particularly the "piggy-backing" of one baseless claim upon another. (Id.).

In the case In re Crazy Eddie Securities Litigation, 747 F.Supp. 850, 859 (E.D.N.Y. 1990) (hereinafter, "Crazy Eddie"), Judge Nickerson found the Korwek rationale even more compelling. In Crazy Eddie, the court dismissed claims under the Securities Act because the named plaintiffs lacked standing to bring those claims. Subsequently, a plaintiff-intervenor with standing moved to intervene to assert those same claims on behalf of the putative class. Judge Nickerson denied intervention. He noted that "there appears to be no good reason to encourage bringing of a suit merely to extend the period in which to find a class representative." (Id., at 856) (citing In re

Elscint, Ltd. Securities Litigation, 674 F.Supp. 374, 378 (D.Mass. 1987).

In Elscint, a case cited in Crazy Eddie, the court articulated the exact concern that has arisen in the present case:

> In certain circumstances the allowance of intervention after certification has been denied for lack of standing may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule. I conclude that this practice is an impermissible use of intervention, akin to the improper use of intervention to manufacture jurisdiction.

In re Elscint, Ltd. Securities Litigation, 674 F.Supp. 374 (D.Mass. 1987).

The case at bar is no different. Here, plaintiffs attempt to do through intervention what they would be strictly prohibited from doing via subsequent filings–continue the tolling benefits for the class action. To the extent they cannot do this through subsequent class action filings, they should not be permitted to do so now.

The prejudice engendered by the plaintiffs' litigation strategy is only exacerbated by the fact that the claims of both the first and second intervenors are baseless. The first intervenors allege that they were charged "unearned fees" for underwriting services. All second intervenors, save David R. and Suzanne L. Jarvis,[7] also assert underwriting fees claims. The Second Circuit, however, made the determination on the underlying commercial transactions that "underwriting fees" were essentially "overcharges," and an overcharge theory was unsupported by law. These claims must therefore be rejected as being of no benefit to those plaintiffs. They make no factual allegations that would take these claims outside of the Second Circuit's determination that "underwriting" fees were "overcharges". Indeed, they present the Court with an almost verbatim explanation of

---

[7] These plaintiffs assert "appraisal fees and tax service fees." (2d. Amend. Compl. ¶ 37).

the charges incurred in the underwriting services transactions they allege.  Even if they had argued that the economic transactions underlying the intervenors' underwriting claims were different, they would essentially be contending that they were subject to different factual predicates than those asserted by the original named plaintiffs.  This would run afoul of the requirement that the claims assert a common question of law or fact–providing the same label of "underwriting charges" for disparate claims does not alone meet the commonality requirement.

The only intervenors' claims that might arguably have any merit are the tax service and appraisal claims of intervenors David and Suzanne Jarvis.  These are insufficiently pleaded, and fail to allege common questions of law or fact for several reasons.  First, plaintiffs do not allege that the fees were for services performed by third parties and subsequently marked up by defendants, and appear only to parrot terms listed in the Second Circuit decision.  This is inadequate to state a mark up claim.  Second, the "appraisal fees" argument is first raised by these plaintiffs, and was not raised in the previous complaint.  At the very least, it suggests a lack of commonality that would counsel against permitting intervention.  Panzirer v. Wolf, 1980 WL 1395, at *10  (S.D.N.Y. 1980) (intervenors have no common nexus of law or fact with plaintiffs that never had a claim, and intervention in such a case is merely a "back-door" attempt to begin an action anew) (citing Lidie v. California, 478 F.2d 552, 555 (9th Cir. 1973).

Moreover, their knowledge of the lack of merit of the named plaintiffs' claims constitutes an independent reason to find intervention untimely.  Here, it should have been clear to plaintiffs' counsel that the original named plaintiffs' claims were meritless when defendants served them with answers to the first set of interrogatories in

December of 2002. (56.1 Stmt., Ex. G 16, 17). In oral argument, plaintiffs all but admitted that they were aware of the lack of a basis for all of the named plaintiffs' complaints, save that of Robert Schill, and stated that there was no purpose to intervening until after the Second Circuit had heard their appeal. (Trans. 12-16-2005, 5:23-6:3); (Plts. Mem. 7).

Since intervention would be both untimely and prejudicial, and the complaints fail to state a basis for relief under RESPA making intervention futile, plaintiffs' motion is denied.

### III. Lack of Venue

Defendants provide a second, independent reason justifying dismissal of all claims–venue with respect to intervenors is improper. When venue is challenged, plaintiff bears the burden of proving that venue is proper in the chosen forum. Central Sports Army Club v. Arena Assocs., Inc., 952 F.Supp. 181, 188 (S.D.N.Y. 1997). For class actions, the venue determination is made by reference to the named parties and their claims only. See, e.g., U.S. ex rel. Sero v. Preiser, 506 F.2d 1115, 1129 (2d. Cir.1974). Except as provided by law, venue is proper only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

§28 U.S.C. 1391. RESPA contains a venue provision, however, requiring any action under §§ 2605, 2607, or 2608 to be brought only in a "district in which the property involved is located, or where the violation is alleged to have occurred." 12 U.S.C. § 2614.

13

In neither of the intervenors' amended complaints do the parties assert that any of the property at issue is located in the Eastern District of New York, nor do they allege that the transactions regarding these properties took place in the forum. In the First Amended Complaint, intervenors Richard and Rhianna Carrillo complain of fees charged in the purchase of their North Las Vegas, Nevada home. Armando Martinez complains of fees related to the financing of San Jose, California home. In the Second Amended Complaint, plaintiffs' attorneys add Alinda Martinez, wife of Armando Martinez, who complains of fees with respect to a San Jose property. They also add David R. Jarvis and Suzanne L. Jarvis, with respect to their residence in Greenwich, Connecticut. Two other intervenors, Sharon Petrie and Patricia Coley, complain of fees charged with respect to their properties in Oneida, New York and Buffalo, New York, respectively. The Court takes judicial notice that none of these cities are located in the Eastern District of New York. Since plaintiffs do not allege that the properties, the transactions which gave rise to their acquisition, or the RESPA violations occurred in the Eastern District, venue is not proper in this district.

An almost identical issue was raised in Webb v. Chase Manhattan Mortgage Corp., 2005 WL 106896 (S.D.N.Y. Jan.18, 2005). There, Judge Daniels considered a putative class action alleging RESPA violations where none of the named plaintiffs resided in the district, and dismissed the case for improper venue.

This case proceeds somewhat differently, since the venue challenge is with respect to intervenors. Generally, intervenors in certified class actions are not held to jurisdictional requirements, provided the court initially had jurisdiction over the matter. (7C Wright, Miller, Cooper, Federal Practice and Procedure, § 1917 (2d ed. 1986))

14

(citing Himmelblau v. Haist, 195 F.Supp. 356, 357 (S.D.N.Y. 1961) (where court had diversity jurisdiction in derivative suit, this was not lost by intervention of plaintiffs that destroyed this diversity)). Venue follows jurisdiction (7C Wright, Miller, Cooper, supra, § 1918), and permissive intervention in a class suit does not normally force intervenors to independently satisfy the venue requirements. City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506, 509 (D.Pa. 1965). Nevertheless, when the original plaintiffs upon whose claims jurisdiction and venue are based are dismissed from the case, plaintiffs must offer independent grounds for venue. (Cf., Providence Health Centers, Inc. v. Matthews, 81 F.R.D. 537 (D.R.I. 1979) (where original plaintiff had settled, and intervenor did not have independent ground for jurisdiction, and could not rely on the non-existent lawsuit, case dismissed without prejudice); Rucker v. Secretary of Treasury of U.S., 555 F.Supp. 1051 (D.Colo.1983) (non-class action where original plaintiff's claim dismissed for lack of jurisdiction and intervenor had no independent jurisdictional basis for claim, dismissal was proper). Here, the dismissal of the original named plaintiffs requires intervenors to provide some basis for venue, which they have failed to do.

    Plaintiffs' only briefed argument in opposition is that the issue is premature, and a motion to transfer venue could cure any defect. No motion to transfer venue is currently before the Court, and so such a motion will not as act as a substitute for the plaintiffs' burden to show that venue is proper. Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 789 F.Supp. 1201 (D.N.H. 1992).[8] Moreover, if defendants did not

---

[8] Plaintiffs assert during oral argument that they could cure the venue defect by the intervention of another named plaintiff. (Trans. 12-16-2005, 7:7-16). This alleged plaintiff does not move the Court to intervene, and the Court does not consider the possibility that some still unnamed members of the class might be able to cure the venue problem. If anything, plaintiffs' assertion that the venue problem could be cured by additional interventions adds fuel to the defendants' argument that the class action device is

challenge venue now, the challenge would be waived. Here, defendants have asserted that challenge at the earliest conceivable moment, and plaintiffs only response is that it is premature, which amounts to nothing more than a request that the Court ignore defendants' argument for plaintiffs' benefit. That is inadequate.

When a showing of venue is missing, it is generally wise to grant leave to amend. Foman v. Davis, 371 U.S. 178, 192, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that plaintiff should be afforded opportunity to amend unless, amongst other factors, it would be futile). Here, it would be futile to permit intervenors to amend, since there is no reason to suspect they will be able to cure their venue problem. During oral argument, plaintiffs suggested that they could seek leave to intervene to cure the venue defect. However, intervention should not be used to manufacture jurisdiction. (Cf. Nagle v. Commercial Credit Bus. Loans, Inc., 102 F.R.D. 27, 31 (E.D.Pa. 1983)). The same could be said of defects in venue.

## IV. Article III Case or Controversy

Finally, defendants argue that since the original named plaintiffs' claims are conceded to be baseless, there is no ongoing case or controversy in which to intervene. Article III of the U.S. Constitution permits courts to hear only cases in which there is a live case or controversy. U.S. Const. Art. III § 2, cl. 1. It is axiomatic that a plaintiff without standing or with a moot claim does not present a case or controversy.[9] Class

---

being abused by plaintiffs to bring an endless series of individual lawsuits.

[9] There are exception to the mootness doctrine for harms capable of repetition, yet evading review, and claims that are at risk of becoming moot before a court could reasonably reach the certification question. See Sosna v. Iowa, 419 U.S. 393 (1975). Plaintiffs do not assert that either of them apply here.

actions complicate the mootness analysis, and implicate questions regarding the proper application of tolling and intervention rules. Much of this winding jurisprudential legacy is owed to a series of Supreme Court cases in the mid-1970s and early 1980s, a history this court will not recite.[10] Comer v. Cisneros, 37 F.3d 775, 797-802 (2d Cir. 1994), contains a concise discussion of these cases.

It is beyond dispute that when a class is certified, the class acquires a legal interest that is separate from the individual claims of the named plaintiffs, and so mootness as to those individual plaintiffs does not moot the class claim. County of Riverside v. McLaughlin, 500 U.S. 44, 51-2, 111 S.Ct. 1661 (1991); Harrington v. Blum, 483 F.Supp. 1015 (S.D.N.Y. 1979).

However, prior to certification, the class is not similarly protected. Although the case did not address the question of whether or not intervention was proper, the Supreme Court held in Bd. of Sch. Comm'rs of the City of Indianapolis v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), that dismissal for lack of a case or controversy is proper when putative class representatives can no longer assert justiciable claims against defendants. (Jacobs, 420 U.S. at 130). Here, the only arguable basis for not dismissing the case is the tentative claim that the intervenors should be permitted to intervene as class representatives.

---

[10] See Crown, Cork & Seal Co., Inc., v. Parker, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.ed.2d 427 (1980) U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); Swisher v. Brady, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976); Youakim v. Miller, 425 U.S. 231, 96 S.Ct. 1399, 47 L.Ed.2d (1976); Franks v. Bowman Transp. Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d. 54 (1975); Bd. of Sch. Comm'rs of the City of Indianapolis v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); American Pipe and Constr. Co., et al v. Utah, 414 U.S. 538, 94 S.Ct. 756 (1974).

The question here is precise: when can a district judge hold the doors to the courthouse open for intervenors in an otherwise non-existent lawsuit? The cases cited by plaintiffs are inapplicable to the case at bar.[11] Here, plaintiffs have essentially continued, via appeal, the prosecution of a putative class through five plaintiffs whose claims, from the earliest returns on discovery, were shown to be baseless almost three years ago. Since the original named plaintiffs claims are moot, and it would be improper to permit intervention to "breathe life into a non-existent lawsuit," the case is dismissed with prejudice. Sanders v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1970 WL 224 (S.D.N.Y. June 29, 1970).

## CONCLUSION

Based on the foregoing, it is hereby:

**ORDERED**, that defendants' motion for summary judgment against original named plaintiffs be granted, that their federal claims be dismissed with prejudice, and that the Court decline to exercise supplemental jurisdiction over their state law claims.

**ORDERED**, that all proposed plaintiffs' motions to intervene be denied.

The Clerk of Court is respectfully directed to close this case.

---

[11] Plaintiffs argue that several Second Circuit cases imply that putative members can intervene to save a putative class where the named plaintiffs' claims have become moot, but they are all unavailing. See, e.g., White v. Matthews, 559 F.2d 852, 857 (2d Cir. 1977) (permitting district court class three months after named plaintiff's claims had become moot because motion to certify was filed prior to mooting of meritorious claim, and delay was not unreasonable); Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980) (permitting intervention in putative class action where certification motion was pending when named plaintiff has died); Eckert v. Equitable Life Assurance Soc., 227 F.R.D. 60 (E.D.N.Y. 2005) (settlement of named plaintiff's claim mooted the putative class action, but court permitted intervenors to take plaintiff's place in order to prevent defendants from "picking-off" lead plaintiffs); Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193 (S.D.N.Y. 1992) (permitting intervention when named plaintiffs claims were mooted, where class was stipulated to by all parties).

SO ORDERED.

Dated:     May _____, 2006
           Brooklyn, New York

                                          _____

                                          I. Leo Glasser
                                          United States District Judge


Copies of the foregoing were sent on this day to:

Barry A. Weprin
Susan M. Greenwood
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119

John J. Stoia, Jr.
Timothy G. Blood
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
401 B Street, Suite 1700
San Diego, CA 92101

Craig H. Johnson
Packard, Packard & Johnson
2795 Cottonwood Parkway, Suite 600
Salt Lake City, UT 84121

Von G. Packard
Ronald D. Packard
Packard, Packard & Johnson
Four Main Street, Suite 200
Los Altos, CA 94022

Michael E. Huber
The Law Offices of Michael E. Huber
8170 S. Highland Drive, Suite E5
Sandy, UT 84093

Attorneys for Plaintiffs Wayne A. Kruse, ("Kruse") Lisa M. McLeod, Robert Schill, and

David and Barbara Legro

Leonard F. Lesser
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

Attorneys for Defendants Wells Fargo Home Mortgage, Inc., WFC Holdings Corp., Wells Fargo & Co., and Wells Fargo Financial Services, Inc.